REICH REICH & REICH, P.C.           HEARING DATE: July 25, 2017
Attorneys for Debtor           HEARING TIME: 10:00 a.m.
Second Southern Baptist
Church of New York
235 Main Street, 4th Floor
White Plains, NY 10601
(914) 949-2126
By: Lawrence R. Reich
lreich@reichpc.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                 Chapter 11

     SECOND SOUTHERN BAPTIST
     CHURCH OF NEW YORK,          Case No. 15-12509(SHL)

               Debtor.
-----------------------------------------------------------X

**DEBTOR'S MOTION PURSUANT TO BANKRUPTCY CODE
SECTIONS 105 AND 363(b), (f) AND (m) AND 365 FOR ENTRY
OF ORDERS: (A) (i) AUTHORIZING SALE OF REAL PROPERTY OF
THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES, SUBJECT TO HIGHER AND BETTER OFFERS,
AND (ii) APPROVING THE TERMS AND CONDITIONS OF THE
PURCHASE AGREEMENT, AND (B) ESTABLISHING BIDDING
PROCEDURES AND APPROVING THE FORM AND MANNER OF NOTICE**

**TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:**

       Second Southern Baptist Church of New York, the debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, submits this motion (the "Motion"), pursuant to sections 105, 363(b), (f) and (m) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002(a)(2), 6004(a), (b), (c), (f), and (g), 9006(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order substantially in the form attached hereto as Exhibit A (the "Sale Order"):

1

(i) Authorizing the sale (the "Sale") of certain real property of the Debtor, described in the Purchase Agreement (as defined below), to S6 Realty Corp. or the successful bidder (the "Purchaser"), free and clear of all liens, claims, and encumbrances, subject to the terms of the Purchase Agreement and subject to higher and better offers; and

(ii) Authorizing the Debtor to assume and assign the Leases referred to in, and annexed to, the Purchase Agreement; and

(iii) Approving the terms and conditions of the Purchase Agreement between the Debtor and S6 Realty Corp. (the "Purchase Agreement"), and authorizing the Debtor to consummate such agreement; and

(iv) An Order, substantially in the form attached hereto as Exhibit B (the "Bidding Procedures Order"), establishing bidding procedures, including approval of the form and manner of notice.

In support of this Motion[1] the Debtor respectfully represents as follows:

**Jurisdiction**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Bankruptcy Code Sections 105, 363 and 365 and Fed R. Bankr.P. 202, 6004, 9006 and 9014.

**Background**

2. On September 9, 2015 (the "Petition Date") the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

3. The Debtor continues to manage its property and assets as a debtor-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108. No trustee or examiner has been appointed in this case.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Purchase Agreement. The Purchase Agreement shall be substantially in the form which is attached hereto as Exhibit D.

2

4.      The Debtor is a New York religious corporation and owns certain real Property, located in Bronx County, New York, with street addresses of 1340 Edward L. Grant Highway, 59A West 170th Street, 53-59 West 170th Street, 53-59 West 170th Street, 1372A Jessup Avenue, Bronx, New York (the "Property").

5.      The filing of this Chapter 11 case was necessitated by the pendency of a scheduled sale in a municipal tax lien foreclosure proceeding entitled NYCTL 2012-A Trust ("Trust") vs. Second Southern Baptist Church of New York, et al., Case No. 260741-2013 which is pending in the Bronx County Supreme Court. The automatic stay prevented the loss of the Property and has allowed the Debtor to proceed with its efforts in this case which led to the arms-length sale of the Property proposed herein.

6.      In an attempt to reorganize its financial affairs the Debtor undertook extensive efforts to obtain mortgage financing for the Property to satisfy the Trusts' and other liens against the Property, aggregating approximately $750,000.00.[2] Unfortunately, those attempts failed for several reasons. First, the Debtor's status as a religious corporation was problematical for those entities approached for financing. Second, the terms sought by any proposed lenders involved in church real property financing were very onerous as to interest rates, loan-to-value ratios and maturity dates.

7.      Once it became apparent to the Debtor that it was not feasible to obtain mortgage financing on reasonable terms, rather than lose the Property at a forced sale by the Trust, it

---

[2] A review of a title report recently obtained by the Purchaser's attorney reflects a judgment for $5,208,532.62 docketed by Larry May against the Debtor in Bronx County on March 1, 2017. Debtor's counsel therefore contacted the attorneys who obtained the judgment for further information. They indicated that the judgment was taken on default in a personal injury action in which the claim was alleged to have occurred at the Property on July 12, 2008. The attorneys were advised that since this Chapter 11 case was filed on September 9, 2015, and the judgment was not docketed until March 1, 2017, the docketing of the judgment was in violation of the automatic stay the Debtor obtained upon the filing of its Chapter 11 case. The attorneys were, therefore, requested to vacate the judgment so that it would not be necessary for the Debtor to move in this Court to have the judgment vacated as a lien against the Property. If the matter cannot be resolved by consent, it is the intention of the Debtor to make such a motion.

3

determined that it was appropriate to proceed with efforts to sell the Property and dissolve the Church pursuant to the provisions of the New York Religious Corporations Law which are outlined hereinafter in detail. To that end the Debtor decided to retain the services of a real estate broker to assist in the sale effort. On December 7, 2016 the Court granted the Debtor's motion to retain MK Property Group NYC Corp.("MK") as its real estate broker. Attached hereto as Exhibit C is a memorandum by MK explaining the listing processes it used to solicit offers for the Property. Through those efforts several written offers were received, each in ascending amount. The highest offer was by the Purchaser, S6 Realty Corp., described below (the "S6 Offer") in the amount of $1,350,000.00 (the "Purchase Price"). The S6 Offer resulted in the entry into the Purchase Agreement described below between the Debtor and S6 Realty Corp. which is the subject of this Motion.

### The Purchase Agreement

8. The Purchase Agreement is explicitly subject to the prior approval of this Court and to any higher or better offer which may be made. Interested parties should review the proposed Purchase Agreement annexed as Exhibit D hereto for the specific terms and conditions thereof.  **A REVIEW OF THE PURCHASE AGREEMENT AND OF THE PROPOSED ORDERS SUBMITTED HEREWITH IS ESSENTIAL TO AN UNDERSTANDING OF THE TRANSACTIONS FOR WHICH APPROVAL IS SOUGHT BY THIS MOTION.**

### Relief Requested

9. The Debtor seeks authorization to sell the Property to the Purchaser or to the Successful Bidder pursuant to the terms and conditions of the Bidding Procedures Order and the Purchase Agreement.  Specifically, the Debtor seeks, pursuant to Bankruptcy Code Sections 105, 363 and 365, and FED. R. BANK.PRO 2002, 4001, 6004 and 9006, entry of:

4

A. the Bidding Procedures Order establishing bidding procedures, including approval of the form and manner of notice;

B. The Sale Order which: (i) authorizes the sale of the Property to the Purchaser or to the Successful Bidder, free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the sale proceeds to the extent, and with the same validity and priority that existed prior to the sale; (ii) authorizes the Debtor to assume and assign the Leases referred to in, and annexed to, the Purchase Agreement; and (iii) approves the terms and conditions of the Purchase Agreement and authorizes the Debtor to consummate such agreement.

**Authorities in Support of Authorization of the Property Sale**

10. Pursuant to Bankruptcy Code Section 363(b)(1), the debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Additionally, Bankruptcy Code Section 105(a) authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The Debtor submits that such relief is appropriate on the facts now before this Court and should be granted.

11. Controlling precedent in the Second Circuit provides that a debtor's sale or use of property of the estate outside the ordinary course of business should be approved by the Court, provided that the debtor can demonstrate a sound business justification for the proposed transaction. See, *In re Chrysler LLC*, 576 F.3d 108, 117-18 (2d Cir. 2009); *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 466-467 (2d Cir. 2007) ("In this Circuit, the sale of an asset of the estate under § 363(b) is permissible if the judge determining the § 363(b) application expressly finds from the evidence presented

5

before him or her at the hearing that there is a good business reason to grant such an application"); citing *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); see also, *In re General Motors Corp.*, 407 B.R. 463, 494-5 (Bankr. S.D.N.Y. 2009) (noting that sales under §363(b) are "commonly" approved subject to the "business judgment rule").

12.    In *Lionel* the Court listed a number of factors that a judge might consider when determining whether there is a "business justification" for the asset sale, which include, but are not limited to: (i) the value of the asset(s) in proportion to the estate as a whole; (ii) the amount of time since the filing; (iii) the likelihood of a proposed and confirmed plan of reorganization in the near future; (iv) the proposed sales effect on future plans of reorganization; and (v) whether the asset is increasing or decreasing in value. *Lionel*, 722 F.2d at 1071.

13.    *In re Lehman Brothers Holdings, Inc.*, 445 B.R. 143, 180 (Bankr. S.D.N.Y. 2011) ("[A] sale should be approved when the court is faced with the situation of a so-called "melting ice cube," a sale that would prevent further, unnecessary losses, the failure of other potential buyers to appear despite well-publicized efforts, and where the only alternative is an immediate liquidation that would yield far less for the estate and creditors."); see also *In re Boston Generating, LLC*, 440 B.R. 302, 329 (Bankr. S.D.N.Y. 2010) ("[I]f the Debtors were to abandon the Sale Transaction…there is a material risk that, although the Debtors may not 'die,' their condition would significantly deteriorate").

14.    The Debtor submits that its decision to sell the Property is an exercise of reasonable business judgment.  The Debtor has determined that the approval of the Purchase Agreement and consummation of the Sale to the Purchaser at this time, subject to higher and better offers for the Property, is in the best interests of the Debtor, its bankruptcy estate and its

6

creditors.  The Debtor, in the exercise of its sound business judgment, has concluded that a prompt sale of the Property to the Purchaser pursuant to Bankruptcy Code Section 363(b), and outside of a plan, will return a greater benefit to the estate than any other alternative, including a forced sale. The Debtor seeks to establish procedures for the submission of competing, higher or better offers from other interested potential bidders.  The Debtor believes that, following any auction generated under those procedures, it will be in a position to present to the Court and its creditors the best price and terms available for the Property.

### The Sale Was Negotiated in Good Faith

15.     Bankruptcy Code Section 363(m) provides in part that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith."  See 11 U.S.C. § 363(m).

16.     The Purchase Agreement is the product of good faith, arm's-length negotiations between the Debtor and the Purchaser represents the highest and best offer received by the Debtor for the Property to date.  Moreover, the Purchaser is a third party unrelated to the Debtor, is not an "insider" of the Debtor within the meaning of Bankruptcy Code Section 101(31) and is not controlled by, or acting on behalf of, any insider of the Debtor.  Finally, pursuant to the Bidding Procedures Order, the Debtor proposes to invite other interested parties to submit higher and better offers for the Property.  See, e.g., *In re After Six, Inc.,* 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993) (finding "good faith" where sale is not to an insider).

17.     Accordingly, the Debtor requests a finding by this Court that the Purchaser has acted in good faith and thus is entitled to the protections of a "good faith" purchaser under Bankruptcy Code Section 363(m).

7

### The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code

18.     Pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property under Section 363(b) free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (i) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (ii) the entity holding the lien, claim or encumbrance consents to the sale; (iii) the interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f); see *Smart World Techs., LLC v. Juno Online Servs. (In re. Smart World Tech., LLC)*, 423 F.3d 166, 169 n.3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests…It thus allows purchasers to acquire assets without any accompanying liabilities."); *In re: Dundee Equity Corp.,* 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y.) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met"). Here, the interest of the Trusts' and other liens is approximately $750,000.00 (plus applicable interest and penalties). The Purchase Price under the Purchase Agreement is $1,350,000.00 (subject to any higher and better offer which may arise from the Bidding Procedures). Therefore, the condition of Section 363(f)(iii) cited above will be met.

### This Court Has the Jurisdiction to Approve the Sale Without New York State Court Approval

19.     New York Religious Corporation Law § 12(1) provides, as relevant here:

> "A religious corporation may not sell...any of its real property without applying for and obtaining leave of the court or the attorney general therefor

8

> pursuant to section five hundred eleven–a of the not for profit corporation law..."

20. However, in a recent case involving the applicability of a similar New York statute, § 511 of the New York Not for Profit Corporation Law (which is referred to in New York Religious Corporation Law § 12(1), Judge Wiles found that: (a) pursuant to § 1221(e) of BAPCPA the requirement of New York State Court approval was not necessary in the Chapter 11 case before him seeking the sale of property by a New York Not for Profit Corporation; and (b) the Bankruptcy Court had exclusive jurisdiction over the not for profit corporation's estate and the disposition of its assets. See, *In re HHH Choices Health Plan, LLC*, 554 BR 697 (Bankr. SDNY 2016).

21. The same reasoning should apply to the case at hand and it is respectfully submitted that this Court should exercise exclusive jurisdiction over the estate and assets of the Debtor, a New York Religious Corporation, and approve the sale proposed herein.

## Ultimate Dissolution of the Debtor Under the New York Religious Corporation Law

23. Section 18 of the New York Religious Corporations Law ("Sec. 18"), as relevant here, provides as follows:

> Whenever any religious corporation shall cease to act in its corporate capacity and keep up the religious services; it shall be lawful for the supreme court of this state, upon the application of a majority of the trustees thereof, in case said court shall deem it proper so to do, to order and decree a dissolution of such religious corporation, and for the purpose to order and direct a sale and conveyance of any and all property belonging to such corporation, and after providing for the ascertaining and payment of the debts of such corporation, and the necessary costs and expenses of such sale and proceedings for dissolution, so far as the proceeds of such sale shall be sufficient to pay the same; such court may order and direct any surplus of such proceeds remaining after paying such debts, costs and expenses, to be devoted and applied to any such religious, benevolent, or charitable objects or purposes as the said trustees may indicate by their petition and the said court may approve.

9

>Such application to said court shall be made by petition, duly verified by said trustees, which petition shall state the particular reason or cause why such sale and dissolution are sought; the situation, condition and estimated value of the property of said corporation, and the particular object or purpose to which it is proposed to devote any surplus of the proceeds of such property...

24. Once the sale of the Property contemplated by the Motion is authorized by this Court and a closing of title with the Purchaser takes place, the Debtor intends to file a Chapter 11 plan of liquidation ("Plan") and an accompanying disclosure statement.

25. When the Plan is confirmed by this Court, all assets other than the net proceeds of the Property are marshalled and reduced to cash proceeds, and all of the Debtor's debts and claims are satisfied, it is the intention of the Debtor to apply under Sec.18 for the dissolution of the Church and the distribution of the surplus funds in accordance with the requirements of Sec.18.

26. It is assumed that this Court will take jurisdiction of the sale process as requested hereinabove and that compliance with the portions of Sec.18 which deal with requesting the New York Supreme Court to order and direct a sale and provide for the ascertaining and payment of debts will not have to be the subject of a State Court petition. In other words, the Debtor's intention is that the Sec.18 petition will need to deal only with the disposition of the surplus proceeds of the sale.

### Approval of Assumption and Assignment of Leases

27. The Debtor seeks authority to assume, assign, and/or transfer the Leases referred to in, and annexed to, the Purchase Agreement. Section 365 of the Bankruptcy Code authorizes a debtor to assume, assign and/or transfer executory contracts and unexpired leases subject to the approval of the Court, if the debtor cures any defaults under such contracts and leases and provides adequate assurance of future performance.

28.     A debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment test and…the debtor's business judgment should not be interfered with, absent a showing of bad faith or abuse of business discretion. *In re Chipwich, Inc.*, 54 B.R. 427, 430-431 (Bankr. S.D.N.Y. 1985) (citing *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 43 (2d Cir. 1979) ("It is enough, if, as a matter of business judgment, rejection of the burdensome contract may benefit the estate."); see also *In re Penn Traffic Co.*, 524 F.3d 373, 378 (2d Cir. 2008).

29.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but one option is a demonstration of the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-606 (Bankr. S.D.N.Y. 1986).

30.     Under the Purchase Agreement the Purchaser is taking an assignment of the Leases.  The Debtor submits that all requirements for the assumption and assignment of the Leases are satisfied.

31.     Per the above, the requirements of Section 363(f)(iii) of the Bankruptcy Code are satisfied with respect to the proposed sale of Property and the assumption and assignment of the Leases. Therefore, subject to the limitations described herein the Debtor seeks authority to sell the Property and to assign the Leases free and clear of all liens, claims, interests and encumbrances with such liens, claims, interests and encumbrances, if any, to attach to the proceeds of sale subject to any rights and defenses that the Debtor may have with respect thereto.

**Proposed Bidding Procedures Governing Higher and Better Offers**

32.     Bankruptcy courts approve bidding procedures under the "business judgment rule." See <u>The Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.,</u>

11

147 B.R. 650, 658 (S.D.N.Y. 1992) (stating that a court should "assess the merits or fairness of business decisions only when a transaction is one involving a predominantly interested board with financial interests in the transaction adverse to the corporation'") (citing *AC Acquisitions Corp. v. Anderson, Clayton & Co.*, 519 A.2d 103, 111 (Del. Ch. 1986)).  The proposed Bidding Procedures Order provides that the Sale is subject to higher and better offers.  Accordingly, the Bidding Procedures Order includes provisions regarding buyer protections and other specific bidding procedures typical for transactions of this nature.  In order to enhance the bidding, the Debtor seeks approval of the following procedures:

Qualified Bids:  The Debtor will consider higher and better offers only if they constitute qualified bids (a "Qualified Bid").  A Qualified Bid is one that:

(i) contains the identity of such potential bidder with an irrevocable offer to purchase the Property under the same terms as set forth in the Agreement,

(ii) proposes a purchase price in an amount totaling at least $1,400,000.00 (the "Minimum Overbid") payable in cash at the Closing,

(iii) is accompanied by delivery of a certified check payable to Second Southern Baptist Church of New York in the amount of $140,000.00 (the "Competing Bid Deposit") (the requirement for a cash Competing Bid Deposit will apply to any and all bidders including without limitation any bidder that intends to proceed by way of "credit bidding" its indebtedness), and

(iv) provides proof satisfactory to the Debtor of the Competing Bidder's financial ability to complete the transaction contemplated by such offer.

33. The Auction:  If the Debtor does not receive any Qualified Bids, the Debtor will report to the Court and will proceed with a sale of the Property to Purchaser under the terms of

the Purchase Agreement. If the Debtor receives a Qualified Bid other than the bid of the Purchaser, the Debtor will conduct an auction (the "Auction") on a date to be fixed by the Court.

34. The proposed Bidding Procedures Order also includes a requirement that the purchase price of any competing bid exceed the Purchase Price by at least $50,000.00. The purpose of these bidding increments is to protect Purchaser from having its offer topped in a *de minimis* amount. The proposed increments will also cover some of the costs incurred by the Debtor and enhances the value of competing bids for the benefit of the bankruptcy estate and its creditors.

35. The Debtor submits that the bidding procedures, terms for competing offers, and related provisions in the Bidding Procedures Order are in the exercise of the Debtor's business judgment, appropriate, in the best interests of the Debtor's estate, and reasonable under the circumstances.

## Sale Hearing

36. The Debtor requests that, pursuant to Bankruptcy Code Section 102 and Bankruptcy Rule 2002, the notice for a hearing on the Motion (the "Sale Hearing") be set for the earliest convenient date available on the Court's calendar. Additionally, a proposed Notice, providing for an objection deadline and scheduling a hearing, is attached to the Bidding Procedures Order, which is annexed hereto as Exhibit E. At the Sale Hearing, the Debtor will request that the Court enter the Sale Order either authorizing the Debtor to consummate the Purchase Agreement, or, if higher bids are submitted, confirming the result and approving the Sale to the Successful Bidder, and granting related relief. At the Sale Hearing, the Successful Bidder will be required to use its best efforts to demonstrate to the satisfaction of the Debtor and

the Court its ability to satisfy the requirements of the Purchase Agreement for the purchase of the Property, and prove its status as a good faith purchaser under Bankruptcy Code Section 363(m).

37. Notice of the Sale Hearing, substantially in the form annexed to the Bidding Procedures Order submitted herewith, will be mailed by first class mail to the following: (a) the United States Trustee; (b) all known creditors; (c) all persons filing a notice of appearance and requesting notice under Bankruptcy Rule 2002; (d) all secured creditors, e) all parties to executory contracts and leases; (g) all governmental agencies and taxing authorities having an interest; and (h) to all other parties in interest required to be served by the Bankruptcy Rules within 5 business days after receipt by counsel of the Bidding Procedures Order approving the notice.

38. The Debtor submits that the foregoing procedures are reasonable under the circumstances and will offer interested parties notice of the Sale Motion and the opportunity to be heard thereon. The Debtor further submits that no party in interest will be prejudiced by the relief requested herein.

## Notice

39. The Debtor has given notice of this Motion to the U.S. Trustee, the U.S. Internal Revenue Service, New York State Department of Taxation and Finance, the Attorney General of the State of New York, the New York City Department of Finance, the New York Environmental Control Board, New York City Water Department, New York City Fire Department, New York City Building Department, New York City Department of Rent and Housing Maintenance Emergency Services and New York City Department of Health, all parties which have filed notices of appearance or requests for notices in this case, and all persons and entities which the Debtor believes might conceivably have an interest in purchasing the Property.

40. No prior motion seeking the relief requested herein has been made by the Debtor to this or any other Court.

41. Finally, this Motion has been timely filed in accordance with the Conditional Order of the Court, dated May 19, 2017, a copy of which is annexed as Exhibit F.

## Conclusion

WHEREFORE, the Debtor respectfully requests that this Court enter orders substantially in the form annexed hereto as Exhibits A and B and grant the Debtor such additional relief as the Court deems just and proper.

Dated: White Plains, New York
      June 20, 2017

                        REICH REICH & REICH, P.C.
                        Attorneys for the Debtor
                        Second Southern Baptist Church
                        of New York

By:  /s/Lawrence R. Reich
      Lawrence R. Reich
      235 Main Street, Suite 450
      White Plains, NY 10601
      (914) 949-2126

15