# Exhibit D

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT ("**Contract**") is made as of June ___, 2017, by and between SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK, a New York Religious Corporation, having its principal office at 1340 Edward L. Grant Highway, Bronx, New York ("**Seller**"), and S6 REALTY CORP. ("**Buyer**"), a New York corporation, having its principal office at 9 East 167th Street, Bronx, New York 10452.

### WITNESSETH

A. Seller is a debtor-in-possession in a Chapter 11 case pending in the United States Bankruptcy Court, Southern District of New York ("**Bankruptcy Court**"), Case No.15-12509-SHL, and the estate of the debtor is the owner of certain improved real property located at 1340 Edward L. Grant Highway, also known as 59A West 170th Street, also known as 53-59 West 170th Street, also known as 53-59 West 170th Street, and also known as 1372A Jessup Avenue, Bronx, New York ("**Property**").

B. Subject to the terms and conditions herein, Buyer desires to purchase the Property on the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, Seller and Buyer agree as follows:

**Section 1. Agreement to Purchase and Sell** - Buyer agrees to purchase from Seller and Seller agrees to sell to Buyer, on the terms and conditions stated in this Contract, the Property which consists of commercial property and building further described on Schedule A, which is attached hereto and made a part hereof.

(a) Purchase Price: The Purchase Price is $1,350,000.00 (One Million Three Hundred Fifty Thousand Dollars) (the "**purchase price**" or the "**Purchase Price**").

(b) Closing. The Buyer shall pay the Purchase Price within 30 days after the date this Contract is approved by final order of the Bankruptcy Court.

**Section 2. Deposit** - Upon Seller's execution of this Contract, Buyer shall deliver to Seller the sum of $135,000.00 (One Hundred Thirty-Five Thousand Dollars) as a deposit ("**Deposit**") which shall include any interest that may accrue thereon, which amount shall be held by counsel for Seller, Reich Reich & Reich, P.C., in a separate interest-bearing account in the name of Reich Reich & Reich, P.C. as attorneys for Seller. At closing, the Deposit shall be applied against the purchase price. If Buyer fails or refuses to perform its obligations hereunder for any reason other than the default of Seller in performance of Seller's obligations hereunder or a failure of the Bankruptcy Court to approve the transactions set forth in and contemplated by this Contract or to issue the Sale Order as set forth and defined in Section 5(a) below, then Seller may retain the Deposit as more particularly set forth in Section 9 hereof.

*Page 1 of 9*

**Section 3. Title** - Title to the Property shall be delivered to Buyer and Buyer agrees to accept such title subject to all of the following ("**Permitted Exceptions**"):

(a) Rights of any utility company to construct, maintain and operate lines, wires, poles, cables, distribution boxes and appurtenances thereto, on, under or across the Property.

(b) Violations of laws, regulations, ordinances, orders or requirements, if any, noted in or issued by any governmental or municipal department or authority having jurisdiction over the Property and any conditions constituting such violations although not so noted or issued. Buyer acknowledges that Buyer shall accept the Premises at closing and shall close title subject to any and all governmental or quasi-governmental violations which may affect the Property as of the date of closing, with no diminution in the purchase price, and with no liability or responsibility of Seller to in any fashion correct any such violations, provided, however, that Seller shall pay any fines & penalties for such violations to the extent that funds are available from the proceeds of the sale. The provisions of this paragraph shall survive the delivery of the deed.

(c) Variations between the lines of record title and fences, hedges and the like and variations between record legal description and tax map description;

(d) Rights contained in instruments of record, if any, so far as the same may be of present force or effect, in favor of any public or quasi-public utility;

(e) Building, zoning and land use restrictions, ordinances and regulations affecting the Property heretofore or hereafter adopted by the State of New York, County of Bronx, City of New York, or by any other governmental authority having jurisdiction thereof, and all amendments or additions thereto now in effect or which are in force and effect on the date of closing hereunder;

(f) Any state of facts which an accurate survey or personal inspection of the Property would show; and

(g) Any and all other covenants, restrictions, agreements, reversions, easements and matters of record.

**Section 4. Closing** - (a) Closing ("**Closing**") shall take place on a mutually agreed day and time at the office of Reich Reich & Reich, P.C., Seller's attorneys, 235 Main Street, 4th Floor, White Plains, New York 10601.

(b) At the Closing, Seller shall deliver to Buyer the following: (i) a quitclaim deed ("**Deed**") in proper form for recording which shall convey all of Seller's right, title and interest in and to the Property to Buyer, subject only to the Permitted Exceptions; (ii) certificate of non-foreign status pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended; (iii) transfer tax declarations or returns; and (iv) such other documents as may be reasonably necessary and appropriate to consummate the Closing.

(c) At the Closing, Buyer shall pay the Purchase Price (less the Deposit and interest earned thereon).

*Page 2 of 9*

(d) At the Closing, Buyer shall deliver to Seller the following: (i) transfer tax declarations or returns; and (ii) such other documents as may be reasonably necessary and appropriate to consummate the Closing.

(e) At the Closing, the Seller shall assign to the Buyer all of the Seller's right, title and interest in and to the leases attached hereto and made a part hereof as Exhibit B. Buyer shall assume all liabilities of Seller arising after the date of closing pursuant to the Leases.

(f) Buyer shall pay for (i) recording fees, or other similar fees or assessments; (ii) all costs incurred by Buyer in performing any feasibility studies and related tests and investigations (including any environmental assessments, audits or reports); and (iii) the charges and premium for its title insurance policy and the cost of the survey, if Buyer elects to obtain same. Each party shall pay its own attorneys' fees.

(g) Seller shall pay capital gains taxes, if any, and for documentary stamp taxes and real estate transfer taxes, if any.

(h) If at the time of the delivery of the deed the Property shall be affected by an assessment payable in installments, such assessment and installments, due and payable after the delivery of the Deed, shall not be deemed a lien upon the premises affected thereby, and such subsequent installments shall be payable by the Buyer. The annual installment for the year in which title closes shall be apportioned at Closing in the same manner as property taxes.

(i) Apportionments at Closing: all adjustments of rents, security deposits, taxes (including, but not limited to real estate taxes and BID charges) and water/sewer charges shall be made as of the day immediately preceding the day which title is closing and shall be computed by the calendar year and day method (365 or 366 days).

**Section 5. Closing Conditions -** (a) The obligation of Seller and Purchaser to comply with and perform under this contract is expressly conditioned upon the issuance of an order by the United States Bankruptcy Court for the Southern District of New York (a) approving the compliance and performance by Seller under this contract, (b) barring forever any Entity (as defined in United States Bankruptcy Code Section 101(15) (an "**Entity**") from asserting against the Purchaser, its successors and assigns, or against the Property, any mortgages, liens, interests, Claim (as defined in United States Bankruptcy Code Section 101(5)) or monetary encumbrances (including judgment liens) held by such Entity against the Debtor or the Property (collectively "**Liens**"), and (c) if so requested by Seller, allowing the Seller not to pay at closing any sums to remove, remedy or comply with Liens against the Debtor on the Property and instead such Liens are to attach to the proceeds of the sale (the "**Sale Order**").

(b) The obligation of Seller to sell and convey the Property under this Contract is subject to the satisfaction of the following conditions precedent or conditions concurrent (the satisfaction of which, except for (iii), may be waived only in writing by Seller): (i) delivery of all monies, and delivery and execution by Buyer of documents and other instruments required to be delivered by Buyer to Seller with respect to the Closing; (ii) there shall be no material uncured default by Buyer

*Page 3 of 9*

of any of its obligations under this Contract; and (iii) all of the actions contemplated by this Contract shall have been approved, upon application of the Seller, by the Bankruptcy Court by final non-appealable order as set forth above. The Buyer understands and acknowledges that the application of the Seller for approval of the Contract will provide that the sale to the Buyer contemplated hereby is required by law to be subject to higher and better offers, if any, resulting from the bidding process which will be ordered by the Court. Should the Seller enter into a contract with a higher and better offer and close title under that contract, then in such event, this contract shall be deemed terminated and the Seller shall immediately return to the Buyer the Deposit and all documents deposited by the Buyer with the Seller.

(c) The obligation of Buyer to acquire the Property under this Contract is subject to the satisfaction of the following conditions precedent or conditions concurrent (the satisfaction of which, except for (iii), may be waived only in writing by Buyer): (i) there shall be no material uncured default by Seller of any of its obligations under this Contract; (ii) delivery and execution by Seller of all items and other instruments required to be delivered by Seller to Buyer with respect to the Closing; (iii) all of the actions contemplated by this Contract shall have been approved by the Bankruptcy Court by final non-appealable order; and (iv) the space in the Property currently occupied by the Seller is vacant five (5) days prior to the Closing and at the time of the Closing.

(d) In the event of a failure of any condition contained in Section 5(b) (i) or hereof, and if Seller has not failed to satisfy any of the conditions set forth in Sections 5(c)(i) or (ii), Seller may either: (i) terminate this Contract and retain the Deposit as more particularly set forth in Section 9 hereof, in which event all documents deposited by Buyer shall be immediately returned to Buyer, and all documents deposited by Seller shall be immediately returned to Seller; or (ii) close the transaction.

(d) In the event of a failure of any condition contained in Section 5(c) (i) or (ii) hereof, and if Buyer has not failed to satisfy any of the conditions set forth in Sections 5(b)(i) or (ii), Buyer may, in Buyer's sole discretion, either: (i) terminate this Contract, in which event the Deposit and all documents deposited by Buyer shall be immediately returned to Buyer and all documents deposited by Seller shall be immediately returned to Seller; or (ii) waive such condition and close the transaction without any reduction or offset to the Purchase Price.

(e) In the event of a failure of the condition contained in Sections 5(a), 5(b) (iii) and 5(c)(iii) hereof, this Contract shall automatically terminate, in which event the Deposit and all documents deposited by Buyer shall be immediately returned to Buyer and all documents deposited by Seller shall be immediately returned to Seller and thereupon this Contract shall be of no further force and effect.

**Section 6. Broker** - Buyer and Seller each warrant and represent to the other that neither has been involved with a real estate broker or agent in connection with the purchase of the Property, other than MK Property Group NYC. Corp. ("**Broker**") which was retained by Seller pursuant to order of the Bankruptcy Court. Seller shall be solely responsible for and shall pay any commission due to Broker pursuant to a separate agreement, such commission to be paid solely from the proceeds of sale directly payable to the Seller. No one shall have any right to any commission from Seller in connection with this transaction except pursuant to a written agreement signed by Seller

and approved by the Bankruptcy Court. The representations and warranties set forth in this Section 6 shall survive the Closing and not be merged therein.

Section 7. Entry on Property - Buyer will prevent its employees, agents, contractors and subcontractors, and the employees of any of them, from entering the Property prior to the Closing unless (i) prior notice thereof is given to Seller and (ii) Buyer agrees in writing in form and substance satisfactory to Seller, to indemnify and hold harmless Seller from any claims or liability of any kind or nature, including attorneys' fees and court costs, arising out of or related to any entry upon the Property by any such persons. Buyer will not be permitted to perform any work on the Property prior to the Closing unless otherwise agreed in writing.

Section 8. Buyer Accepts Property "As Is" - (a) Buyer acknowledges for itself and its successors and assigns, that Buyer (i) has been given a reasonable opportunity to inspect and investigate the Property and all aspects relating thereto, either independently or through agents and experts of Buyer's choosing; and (ii) is acquiring the Property based upon Buyer's own investigation and inspection thereof. SELLER AND BUYER AGREE THAT THE PROPERTY SHALL BE SOLD AND THAT BUYER SHALL ACCEPT POSSESSION OF THE PROPERTY ON THE CLOSING DATE "AS IS, WHERE IS, WITH ALL FAULTS" WITH NO RIGHT OF SET-OFF OR REDUCTION IN THE PURCHASE PRICE AND THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS CONTRACT, SUCH SALE SHALL BE WITHOUT REPRESENTATION OR WARRANTY OF SELLER OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTY OF INCOME POTENTIAL OPERATING EXPENSES, USES, AND MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. SELLER DOES HEREBY DISCLAIM AND RENOUNCE ANY SUCH REPRESENTATION OR WARRANTY. BUYER SPECIFICALLY ACKNOWLEDGES THAT BUYER IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM SELLER OR ANY AGENTS OR BROKERS AS TO ANY MATTER CONCERNING THE PROPERTY.

(b) In addition to and not by way of limitation of the sale of the Property on an "AS IS" basis under this Contract, Buyer acknowledges that Seller makes no representations or warranties whatsoever regarding the presence or absence of any hazardous materials in, at, or under the Property. Seller shall have no obligation for the clean-up, removal or remediation of any hazardous materials. Under no circumstances whatsoever shall Buyer or its successors or assigns, or any person claiming any interest in the Property from, through or under Buyer, have any right or claim of any kind or nature whatsoever against Seller as the result of any matter related to such hazardous substances, all of which rights and claims are hereby released. Buyer has made such studies and investigations, conducted such tests and surveys, and engaged such specialists as Buyer has deemed appropriate to evaluate fairly the Property and its risks from an environmental and hazardous materials standpoint. Notwithstanding anything herein to the contrary, the acknowledgments of Buyer set forth in this Section 8(d) shall survive the Closing.

Section 9. Performance - If Buyer is unable or fails to perform any of its obligations under this Contract, Seller, with the consent of Lender, shall be entitled to terminate this Contract and retain the Deposit as liquidated damages. Buyer acknowledges that Seller's damages would be difficult to determine and that such sum is a reasonable estimate of Seller's damages. Buyer and

Seller further agree that this Section 9 is intended to, and does, liquidate the amount of damages due Seller, and shall be the exclusive remedy of Seller against Buyer, both at law and in equity arising from or related to a breach by Buyer of its obligation to consummate the transaction contemplated by this Contract.

**Section 10. Inability to Convey** - If Seller is unable to convey title in accordance with this Contract for any reason other than Buyer's default, the sole obligation of Seller shall be to refund the Deposit and all interest accrued thereon to Buyer, and upon such refund, this Contract shall be considered canceled, whereupon neither party shall have any liability to the other hereunder except as to Sections 6 and 8, which shall survive such cancellation.

**Section 11. Successors and Assigns** - This Contract shall bind Buyer and Seller and anyone succeeding to their interests in this Contract. Buyer shall have the right, by written notice to Seller not less than five (5) business days prior to Closing, to designate another entity to take title to all or any part of the Property. No such designation shall be valid unless and until Buyer has delivered to Seller an agreement whereby such designee shall assume the performance of and agree to be bound by all of the terms, covenants and conditions of this Contract. Notwithstanding such designation, the original named Buyer hereunder shall remain liable for all of the obligations of Buyer under this Contract and both the original named Buyer and such designee shall be deemed assumed the responsibility and liability described in Section 8(b). Except to the extent otherwise set forth herein, Buyer shall have no right to assign this Contract or its rights hereunder without the prior written consent of Seller. Nothing in this Section 11 shall be deemed to entitle Buyer to any extension of time under any provision of this Contract.

**Section 12. Amendment** - This Contract represents the parties' entire agreement. It supersedes all prior statements, negotiations and agreements, whether written or oral. This Contract may not be amended, altered or modified except by a written instrument executed by the party to be bound.

**Section 13. Notices** - During the term of this Contract, or until written notice of a change in address is delivered to the other parties, notices shall be sent in writing and delivered personally or sent by certified mail or by overnight delivery by a nationally recognized carrier to the following addresses:

To Seller:          c/o Reich Reich & Reich, P.C.
                    235 Main Street, 4th Floor
                    White Plains, NY 10601

To Buyer:           c/o Edward Shendell, Esq.
                    One James Avenue
                    Port Washington, NY 11050

All such notices shall be deemed to have been given on the date they are delivered personally, on the business day after the date on which they were sent by overnight delivery, or four days after the date they were sent by certified mail.

**Section 14. Choice of Law** - This Contract shall be governed by and construed in accordance with the laws of the State of New York.

**Section 15. Recording** - Neither this Contract nor any evidence of it shall be recorded.

**Section 16. Severability** - The invalidity or unenforceability of any provision of this Contract shall, at the option of either party, invalidate the entire Contract. Otherwise, the remainder of this Contract shall remain in full force and effect.

**Section 17. Attorneys' Fees** - If litigation arises out of or in connection with enforcement of this Contract, the prevailing party shall be entitled to recover its reasonable litigation costs, including expert witness fees and attorneys' fees.

**Section 18. Buyers Representations** - Buyer represents, warrants, and covenants to Seller that:

(a) Buyer (i) is a corporation, partnership, limited liability company, trust, association, municipal corporation or other applicable entity, as set forth in the introductory paragraph hereof, duly organized, validly existing and in good standing under the laws of the state of its organization as specified in such introductory paragraph, and if not organized in New York is duly qualified to do business in the State of New York, (ii) has the full power and authority to purchase the Property and to execute this Contract and all documents contemplated hereby, and (iii) has taken all actions and obtained all consents and approvals required for the consummation of the transactions contemplated by this Contract.

(b) This Contract constitutes valid and binding obligations of Buyer and is enforceable against Buyer in accordance with its terms. The execution of this Contract, delivery of the Deposit and the balance of the Purchase Price and all required documents, Buyer's performance of this Contract and the transaction contemplated hereby have been duly authorized by the requisite action on the part of Buyer.

(c) Neither the execution and delivery of, nor the performance under, this Contract or any other document executed and delivered by Buyer or any assignee or designee of Buyer (either contemporaneously herewith or at the Closing) in connection with this transaction is precluded by, will conflict with, result in a breach of or violate, any provision of (i) any existing Federal, state, local or other governmental or quasi-governmental law, statute, ordinance, restriction, rule or regulation, or (ii) any judgment, order decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality applicable to Buyer or such assignee or designee.

**Section 19. Seller's Representations** - Seller represents, warrants, and covenants to Buyer that:

(a) Seller is the debtor-in-possession in a Chapter 11 case pending in the United States Bankruptcy Court, Southern District of New York (Case No.15-12509-SHL).

(b) The submission of this agreement shall not constitute an offer by Seller to execute and exchange the same with Buyer, and is made subject to Seller's acceptance and execution thereof, and Seller is in no way bound under this Contract until it has been executed by the Seller.

(c) Neither the execution and delivery of, nor the performance under, this Contract or any other document executed and delivered by Seller (either contemporaneously herewith or at the Closing) in connection with this transaction is precluded by, will conflict with, result in a breach of or violate, any provision of (i) any existing Federal, state, local or other governmental or quasi-governmental law, statute, ordinance, restriction, rule or regulation, or (ii) any judgment, order decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality applicable to Seller.

(d) If any part or provision of this contract shall be finally determined to be void, illegal or legally unenforceable by any Court of competent jurisdiction, such determination shall not effect the validity of any other part or provisions of this contract, all of which shall remain in full force and effect as between Seller and Purchaser.

(e) No failure on the part of the Seller to exercise and no delay in exercising any right or remedy hereunder shall act as a waiver thereof, nor shall any single or partial exercise by the Seller of any right or remedy hereunder preclude any other or further exercise thereof. In the event that the Seller waives any default of the Buyer hereunder, such waiver shall not be construed as a waiver of any other default. No prior course of dealing between the parties or the respective attorneys or custom within the real estate industry shall in any way, manner or form modify or supplement the terms and conditions of this agreement.

(f) There are no other leases, licenses, occupants or tenancies at or for the Property except as set forth on Exhibit B and that no other person or entity have any other rights of tenancy or occupancy in or to the Property.

*- Signature Page Follows -*

**Section 20. Acceptance of Deed** - The acceptance of the Deed by Buyer shall be deemed to be a full performance of and discharge of any and all agreements and obligations on the part of Seller to be performed pursuant to the provisions of this Contract, except for such provisions of this Contract as are expressly stated to survive the delivery of the Deed.

**Seller - Second Southern Baptist Church of New York**

By: _____

Name: _____

Title: _____

**Buyer - S6 REALTY CORP.**

By: _____

   Shalev Shoshani, Vice President

*Page 9 of 9*

# Exhibit A

SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Bronx, City and State of New York, bounded and described as follows:

BEGINNING at the intersection of the northerly side of West 170th Street and the easterly side of Jessup Avenue, as said street and avenue are now legally opened; running thence northerly along the easterly side of Jessup Avenue 105.86 feet; thence easterly at right angles to Jessup Avenue, 78.89 feet to the westerly side of West 170th Street; thence southwesterly along the westerly side of West 170th Street, 119.30 feet to the intersection of the westerly side of West 170th Street and the northerly side of West 170th Street; and thence westerly along the northerly side of West 170th Street, 23.89 feet to the point or place of BEGINNING.

Being the same premises as was conveyed to the Second Southern Baptist Church of New York by Deed from Popham Realty Corp. dated December 24, 1976 which was recorded in Bronx County Registrar's Office on December 28, 1976.

# Exhibit B

## COMMERCIAL Double Net LEASE AGREEMENT

This Commercial Lease Agreement ("Lease") is made and effective November 1st 2010 ____ [Date] by and between ____ Mario Delbrun (property manager) ____

Landlord ("Landlord") and *GRANT PHARMACY INC.* ____ [Tenant ("Tenant").

Landlord is the owner of land and improvements commonly known and numbered as

*1340 Edward Grant Hwy, Bronx, NY 10452* [Address of Building]

and legally described as follows (the "Building"):

____

____ [Legal Description of Building].

Landlord makes available for lease a portion of the Building designated as

____ [Suite or Other Number of Leased Building] (the "Leased Premises").

Landlord desires to lease the Leased Premises to Tenant, and Tenant desires to lease the Leased Premises from Landlord for the term, at the rental and upon the covenants, conditions and provisions herein set forth.

THEREFORE, in consideration of the mutual promises herein, contained and other good and valuable consideration, it is agreed:

1. Term.

A. Landlord hereby leases the Leased Premises to Tenant, and Tenant hereby leases the same from Landlord, for an "Initial Term" beginning November 1st, 2010 ____ [Start Date] and ending ____

November 1, 2016 [End Date]. Landlord shall use its best efforts to give Tenant possession as nearly as possible at the beginning of the Lease term. If Landlord is unable to timely provide the Leased Premises, rent shall abate for the period of delay. Tenant shall make no other claim against Landlord for any such delay.

B. Tenant may renew the Lease for one extended term of _____ 6 year _____ [Renewal Term]. Tenant shall exercise such renewal option, if at all, by giving written notice to Landlord not less than ninety (90) days prior to the expiration of the Initial Term. The renewal term shall be at the rental set forth below and otherwise upon the same covenants, conditions and provisions as provided in this Lease.

2. Rental.

A. Tenant shall pay to Landlord during the initial term rental of __$21,600.00__ [Annual Rent] per year, payable in installments of __$1,800.00__ [Monthly Rental Amount] per month. Each installment payment shall be due in advance on the first day of each calendar month during this lease term to Landlord at (Property Manager will pick rent) [Landlord's Designated Payment Address] or at such other place designated by written notice from Landlord or Tenant. The rental payment amount for any partial calendar months included in the lease term shall be prorated on a daily basis. Tenant shall also pay to Landlord a "Security Deposit" in the amount of _____ [Security Deposit].

B. The rental for any renewal lease term, if created as permitted under this Lease, shall be __21,600.00__ [Annual Rent in Renewal Term] per year payable in installments of __1,800__ [Monthly Rental Amount] per month.

4. Use

Notwithstanding the forgoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.

**4. Sublease and Assignment.**

Tenant shall have the right without Landlord's consent, to assign this Lease to a corporation with which Tenant may merge or consolidate, to any subsidiary of Tenant, to any corporation under common control with Tenant, or to a purchaser of substantially all of Tenant's assets. Except as set forth above, Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in whole or in part without Landlord's consent, such consent not to be unreasonably withheld or delayed.

**5. Repairs.**

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof, subject to the obligations of the parties otherwise set forth in this Lease.

**6. Alterations and Improvements.**

Tenant, at Tenant's expense, shall have the right following Landlord's consent to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to place and install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises by Tenant thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that all damage to the Leased Premises caused by such removal shall be repaired by Tenant at Tenant's expense.

**7. Property Taxes.**

Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due during the Lease term on the Leased Premises, and all personal property taxes with respect to Landlord's personal property, if any, on the Leased Premises.

8. Insurance:

A. If the Leased Premises or any other part of the Building is damaged by fire or other casualty resulting from any act or negligence of Tenant or any of Tenant's agents, employees or invitees, rent shall not be diminished or abated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

B. Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amounts as Landlord shall deem appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

C. Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the respective activities of each in the Building with the premiums thereon fully paid on or before due date, issued by and binding upon some insurance company approved by Landlord, such insurance to afford minimum protection of not less than $1,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. Landlord shall be listed as an additional insured on Tenant's policy or policies of comprehensive general liability insurance, and Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph. Tenant shall obtain the agreement of Tenant's insurers to notify Landlord that a policy is due to expire at least (10) days prior to such expiration. Landlord shall not be required to maintain insurance against thefts within the Leased Premises or the Building.

9. Utilities.

Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges. Tenant shall pay such amounts within fifteen (15) days of invoice. Tenant acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilize excessive electrical energy or which may, in Landlord's reasonable opinion, overload the wiring or interfere with electrical services to other tenants.

10. Signs.

Following Landlord's consent, Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, any signs which are permitted by applicable zoning ordinances and private restrictions. Landlord may refuse consent to any proposed signage that is in Landlord's opinion too large, deceptive, unattractive or otherwise inconsistent with or inappropriate to the Leased Premises or use of any other tenant. Landlord shall assist and cooperate with Tenant in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

11. Entry.

Landlord shall have the right to enter upon the Leased Premises at reasonable hours to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

12. Parking.

During the term of this Lease, Tenant shall have the non-exclusive use in common with Landlord, other tenants of the Building, their guests and invitees, of the non-reserved common automobile parking areas, driveways, and footway's, subject to rules and regulations for the use thereof as prescribed from time to time by Landlord. Landlord reserves the right to designate parking areas within the Building or in reasonable proximity thereto, for Tenant and Tenant's agents and employees. Tenant shall provide Landlord with a list of all license numbers for the cars owned by Tenant, its agents and employees. Separated structured parking, if any, located about the Building is reserved for tenants of the Building who rent such parking spaces. Tenant hereby leases from Landlord _____ [Number of Parking Spaces] spaces to such structural parking area, such space to be on a first come-first served basis. In consideration of the leasing to Tenant of such spaces, Tenant shall pay a monthly rental of _____ [Parking Space Rental] per space throughout the term of the Lease. Such rental shall be due and payable each month without demand at the time herein set for the payment of other monthly rentals, in addition to such other rentals.

## 13. Building Rules.

Tenant will comply with the rules of the Building adopted and altered by Landlord from time to time and will cause all of its agents, employees, invitees and visitors to do so; all changes to such rules will be sent by Landlord to Tenant in writing. The initial rules for the Building are attached hereto as Exhibit "A" and incorporated herein for all purposes.

## 14. Damage and Destruction.

Subject to Section 8 A. above, if the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects that the same cannot be used for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord. In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes, governmental restrictions, inability to obtain

necessary materials or labor or other matters which are beyond the reasonable control of Landlord. Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes. Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, but if no further payments are to be made, any such advance payments shall be refunded to Tenant. The provisions of this paragraph extend not only to the matters aforesaid, but also to any occurrence which is beyond Tenant's reasonable control and which renders the Leased Premises, or any appurtenance thereto, inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes.

**15. Default.**

If default shall at any time be made by Tenant in the payment of rent when due to Landlord as herein provided, and if said default shall continue for fifteen (15) days after written notice thereof shall have been given to Tenant by Landlord, or if default shall be made in any of the other covenants or conditions to be kept, observed and performed by Tenant, and such default shall continue for thirty (30) days after notice thereof in writing to Tenant by Landlord without correction thereof then having been commenced and thereafter diligently prosecuted, Landlord may declare the term of this Lease ended and terminated by giving Tenant written notice of such intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises. Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, either in law or equity. Landlord shall use reasonable efforts to mitigate its damages.

**16. Quiet Possession.**

Landlord covenants and warrants that upon performance by Tenant of its obligations hereunder, Landlord will keep and maintain Tenant in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease.

**17. Condemnation.**

If any legally constituted authority condemns the Building or such part thereof which shall make the Leased Premises unsuitable for leasing, this Lease shall cease when the public authority takes possession, and Landlord and Tenant shall account for rental as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority.

## 18. Subordination.

Tenant accepts this Lease subject and subordinate to any mortgage, deed of trust or other lien presently existing or hereafter arising upon the Leased Premises, or upon the Building and to any renewals, refinancing and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgagee may deem appropriate in its discretion. Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Leased Premises of the Building, and Tenant agrees upon demand to execute such further instruments subordinating this Lease or attorning to the holder of any such liens as Landlord may request. In the event that Tenant should fail to execute any instrument of subordination herein required to be executed by Tenant promptly as requested, Tenant hereby irrevocably constitutes Landlord as its attorney-in-fact to execute such instrument in Tenant's name, place and stead, it being agreed that such power is one coupled with an interest. Tenant agrees that it will from time to time upon request by Landlord execute and deliver to such persons as Landlord shall request a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord shall reasonably require.

## 19. Security Deposit.

**21. Brokers.**

Tenant represents that Tenant was not shown the Premises by any real estate broker or agent and that Tenant has not otherwise engaged in, any activity which could form the basis for a claim for real estate commission, brokerage fee, finder's fee or other similar charge, in connection with this Lease.

**22. Waiver.**

No waiver of any default of Landlord or Tenant hereunder shall be implied from any omission to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in this express waiver and that only for the time and to the extent therein stated. One or more waivers by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

**23. Memorandum of Lease.**

The parties hereto contemplate that this Lease should not and shall not be filed for record, but in lieu thereof, at the request of either party, Landlord and Tenant shall execute a Memorandum of Lease to be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

**24. Headings.**

The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

**25. Successors.**

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

## 26. Consent.

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required or desirable under this Lease.

## 27. Performance.

If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures, together with interest thereon at a rate equal to the lesser of twelve percent (12%) per annum or the then highest lawful rate. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the un-reimbursed balance plus accrued interest to Tenant on demand.

## 28. Compliance with Law.

Tenant shall comply with all laws, orders, ordinances and other public requirements now or hereafter pertaining to Tenant's use of the Leased Premises. Landlord shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises.

## 29. Final Agreement.

This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

30. Governing Law.

This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of New York.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

_____

[Landlord Signature]    Marcus DeCavuz

_____

[Tenant Signature]    PRADEEP MUKERJEA

# STANDARD FORM OF STORE LEASE

The Real Estate Board of New York, Inc.

8/99

**Agreement of Lease,** made as of this 28th day of January in the year 2015, between

SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK, a New York religious corporation with offices a c/o Mario Delbrun, 587 West Side Avenue, #3D, New York, New York 10031

party of the first part, hereinafter referred to as OWNER, and

JESUS JIMENEZ d/b/a Go Go Gadget Mobile & More, 1165 Colgate Avenue, Bronx, NY 10472

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner

in the building known as part of 1372 Jesup Avenue, Bronx, New York 10452
in the Borough of Bronx, City of New York, for the term of

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the 1st day of February in the year 2015, and to end on the 31st day of January in the year 2019 and both dates inclusive, at an annual rental rate of Sixteen Thousand Two Hundred payable monthly in the amount of $1,350.00.

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy the demised premises for mobile devices

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof, and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises, and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall not be entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other Casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall



40. Tenant shall pay all its own utilities for the demised premises.

41. Monthly rent payments received after the 15th of the month shall include a late payment fee of $150.00.

IN WITNESS WHEREOF, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

_____

SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK

By: Mario Deloren

Witness for Tenant:

_____

Jesus Jimenez

**STANDARD FORM OF STORE LEASE**
The Real Estate Board of New York, Inc.

8/89

Agreement of Lease, made as of this _____ day of _____ in the year _____ between

party of the first part, hereinafter referred to as OWNER, and

Belmant Rodriguez

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner

in the building known as a portion of 59 A West 170th street

in the Borough of _____ City of New York, for the term of 7 years

_____ day of November _____ in the year 2024 _____ and to end on the _____

day of _____ in the year _____

both dates inclusive, at an annual rental rate of $13,200 payable monthly at $1100

which Tenant agrees to pay in lawful money of the United States...

**Vault, Vault Space, Area:** 14. No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building, is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:** 15. Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the demised premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the demised premises, and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:** 16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant, as and for liquidated damages, an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If the demised premises, or any part thereof, be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the demised premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages, by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:** 17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property, whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title 11 of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the demised premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default, and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner, but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein, or any item of additional rent herein mentioned, or any part of either, or in making any other payment herein required; then, and in any of such events, Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of the demised premises, and remove their effects and hold the demised premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of Owner and Waiver of Redemption:** 18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the demised premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the demised premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises; and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever, for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and Expenses:** 19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under, or by virtue of, any of the terms or provisions in any article of this lease, after notice if required, and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately, or at any time thereafter, and without notice, perform the obligation of Tenant thereunder. and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding, and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Representations by Owner:** 20. Neither Owner nor Owner's agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the demised premises, except as herein expressly set forth, and no rights, easements or licenses are acquired by Tenant by implication or otherwise, except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as-is", and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 21. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, "broom-clean", in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday, unless it be a legal holiday, in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 22. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 23. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed

## IMPORTANT - PLEASE READ

**RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.**

# STANDARD FORM OF STORE LEASE

The Real Estate Board of New York, Inc.

8/99

**Agreement of Lease,** made as of October 20, 2011

between SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK, a New York religious corporation with offices at c/o Maria Delbrun, 567 West Side Avenue, #3D, New York, New York 10031

party of the first part, hereinafter referred to as OWNER, and

BELMARI RODRIGUEZ

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner a store

in the building known as a portion of 57A West 170th Street in the Borough of Bronx, City of New York, for the term of 5 years

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the 1st day of November in the year 2011, and to end on the 31st day of December in the year 2016 both dates inclusive, at an annual rental rate of $12,000.00 payable monthly at $1,000.00 per month.

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy the demised premises for Income Tax preparation store.

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner, and Tenant agrees to carry, and will cause Tenant's contractors and sub-contractors to carry, such worker's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing a bond as permitted by law. All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to, or to prevent Tenant's removal of, trade fixtures, moveable office furniture and equipment, but upon removal of same from the demised premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to any such installations, and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the demised premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the demised premises by Owner at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs therein necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others, making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building, including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters, or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall

40. Tenant shall pay all its own utilities for the leased premises.

IN WITNESS WHEREOF, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

_____

SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK

By: _____
Mario Delbron

_____
Belkis Rodriguez

Witness for Tenant:

_____



**STANDARD FORM OF STORE LEASE**
The Real Estate Board of New York, Inc.

2/59

Agreement of lease, made as of October 20, 2011 , between
SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK, a New York religious corporation with offices at
c/o Mario Delbrun, 587 West Side Avenue, JSD, New York, New York 10031
party of the first part, hereinafter referred to as OWNER, and

SEA FRUITS, INC.

party of the second part, hereinafter referred to as TENANT,

Witnesseth:   Owner hereby leases to Tenant and Tenant hereby hires from Owner    a store

in the building known as    a portion of 57 West 170th Street
in the Borough of Bronx
, City of New York, for the term of   5 years

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
1st    day of   November                          in the year   2011 , and to end on the
31st    day of   December                          in the year   2016                        and
both days inclusive, at an annual rental rate of   $12,000.00 payable monthly at $1,000.00 per month.

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first     monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

Rent:   1. Tenant shall pay the rent as above and as hereinafter provided.

Occupancy:   2. Tenant shall use and occupy the demised premises for a retail seafood store.

and for no other purpose.

*Tenant's proportionate share as determined by landlord.*

40. Tenant shall pay all its own utilities for the demised premises.

IN WITNESS WHEREOF, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written:

Witness for Owner:

_____

SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK

By: _____
Mario Delbrun

Sea Fruits, Inc.

Witness for Tenant:

_____

By: _____
Victor Tavarez



# COMMERCIAL Double Net LEASE AGREEMENT

This Commercial Lease Agreement ("Lease") is made and effective October 1st, 201_____ [Date], by and between _____ Mario Delbrun (property manager) *Mario DelBrun* [Landlord] ("Landlord") and _____ *Jesus Jimenez* _____ [Tenant] ("Tenant").

Landlord is the owner of land and improvements commonly known and numbered as _____ *1340 Edward L. Grant Hwy* _____ [Address of Building] and legally described as follows (the "Building"): _____ *Jewelry and Wireless* _____ [Legal Description of Building]

Landlord makes available for lease a portion of the Building designated as _____ *1340 Edward L. Grant Hwy* [Suite or Other Number of Leased Building] (the "Leased Premises").

Landlord desires to lease the Leased Premises to Tenant, and Tenant desires to lease the Leased Premises from Landlord for the term, at the rental and upon the covenants, conditions and provisions herein set forth.

THEREFORE, in consideration of the mutual promises herein, contained and other good and valuable consideration, it is agreed:

## 1. Term.

A. Landlord hereby leases the Leased Premises to Tenant, and Tenant hereby leases the same from Landlord, for an "Initial Term" beginning _____ *October 4th, 2010* _____ [Start Date] and ending _____ *April 1st, 2013 → MD* _____

April 30th 2011_____ [End Date]. Landlord shall use its best efforts to give Tenant possession as nearly as possible at the beginning of the Lease term. If Landlord is unable to timely provide the Leased Premises, rent shall abate for the period of delay. Tenant shall make no other claim against Landlord for any such delay.

B. Tenant may renew the Lease for one extended term of _____ [Renewal Term]. Tenant shall exercise such renewal option, if at all, by giving written notice to Landlord not less than ninety (90) days prior to the expiration of the Initial Term. The renewal term shall be at the rental set forth below and otherwise upon the same covenants, conditions and provisions as provided in this Lease.

## 2. Rental.

A. Tenant shall pay to Landlord during the Initial Term rental of $15,120.00 MD __$14,480.00____ [Annual Rent] per year, payable in installments of $1,260 = MD/M __$1,260.00__ [Monthly Rental Amount] per month. Each installment payment shall be due in advance on the first day of each calendar month during the lease term to Landlord at (Property Manager will pick rent).___ [Landlord's Designated Payment Address] or at such other place designated by written notice from Landlord or Tenant. The rental payment amount for any partial calendar months included in the lease term shall be prorated on a daily basis. Tenant shall also pay to Landlord a "Security Deposit" in the amount of _____ [Security Deposit].

B. The rental for any renewal lease term, if created as permitted under this Lease, shall be _____ [Annual Rent in Renewal Term] per year payable in installments of _____ [Monthly Rental Amount] per month.

## 3. Use

Notwithstanding the forgoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.

**4. Sublease and Assignment.**

Tenant shall have the right without Landlord's consent, to assign this Lease to a corporation with which Tenant may merge or consolidate, to any subsidiary of Tenant, to any corporation under common control with Tenant, or to a purchaser of substantially all of Tenant's assets. Except as set forth above, Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in whole or in part without Landlord's consent, such consent not to be unreasonably withheld or delayed.

**5. Repairs.**

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof, subject to the obligations of the parties otherwise set forth in this Lease.

**6. Alterations and Improvements.**

Tenant, at Tenant's expense, shall have the right following Landlord's consent to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to place and install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises by Tenant thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that all damage to the Leased Premises caused by such removal shall be repaired by Tenant at Tenant's expense.

**7. Property Taxes.**

Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due during the Lease term on the Leased Premises, and all personal property taxes with respect to Landlord's personal property, if any, on the Leased Premises.

8. Insurance.

A. If the Leased Premises or any other part of the Building is damaged by fire or other casualty resulting from any act or negligence of Tenant or any of Tenant's agents, employees or invitees, rent shall not be diminished or abated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

B. Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amounts as Landlord shall deem appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

C. Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the respective activities of each in the Building with the premiums thereon fully paid on or before due date, issued by and binding upon some insurance company approved by Landlord, such insurance to afford minimum protection of not less than $1,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. Landlord shall be listed as an additional insured on Tenant's policy or policies of comprehensive general liability insurance, and Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph. Tenant shall obtain the agreement of Tenant's insurers to notify Landlord that a policy is due to expire at least (10) days prior to such expiration. Landlord shall not be required to maintain insurance against thefts within the Leased Premises or the Building.

**9. Utilities.**

Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges. Tenant shall pay such amounts within fifteen (15) days of invoice. Tenant acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilize excessive electrical energy or which may, in Landlord's reasonable opinion, overload the wiring or interfere with electrical services to other tenants.

**10. Signs.**

Following Landlord's consent, Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, any signs which are permitted by applicable zoning ordinances and private restrictions. Landlord may ref use consent to any proposed signage that is in Landlord's opinion too large, deceptive, unattractive or otherwise inconsistent with or inappropriate to the Leased Premises or use of any other tenant. Landlord shall assist and cooperate with Tenant in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

**11. Entry.**

Landlord shall have the right to enter upon the Leased Premises at reasonable hours to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

**12. Parking.**

During the term of this Lease, Tenant shall have the non-exclusive use in common with Landlord, other tenants of the Building, their guests and invitees, of the non-reserved common automobile parking areas, driveways, and footways, subject to rules and regulations for the use thereof as prescribed from time to time by Landlord. Landlord reserves the right to designate parking areas within the Building or in reasonable proximity thereto, for Tenant and Tenant's agents and employees. Tenant shall provide Landlord with a list of all license numbers for the cars owned by Tenant, its agents and employees. Separated structured parking, if any, located about the Building is reserved for tenants of the Building who rent such parking spaces. Tenant hereby leases from Landlord _____ [Number of Parking Spaces] spaces in such structural parking area, such spaces to be on a first come-first served basis. In consideration of the leasing to Tenant of such spaces, Tenant shall pay a monthly rental of _____ [Parking Space Rental] per space throughout the term of the Lease. Such rental shall be due and payable each month without demand at the time herein set for the payment of other monthly rentals, in addition to such other rentals.

## 13. Building Rules.

Tenant will comply with the rules of the Building adopted and altered by Landlord from time to time and will cause all of its agents, employees, invitees and visitors to do so; all changes to such rules will be sent by Landlord to Tenant in writing. The initial rules for the Building are attached hereto as Exhibit "A" and incorporated herein for all purposes.

## 14. Damage and Destruction.

Subject to Section 8 A. above, if the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects that the same cannot be used for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord. In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes, governmental restrictions, inability to obtain

necessary materials or labor or other matters which are beyond the reasonable control of Landlord. Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy, or use, in whole or in part, for Tenant's purposes. Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, but if no further payments are to be made, any such advance payments shall be refunded to Tenant. The provisions of this paragraph extend not only to the matters aforesaid, but also to any occurrence which is beyond Tenant's reasonable control and which renders the Leased Premises, or any appurtenance thereto, inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes.

## 15. Default.

If default shall at any time be made by Tenant in the payment of rent when due to Landlord as herein provided, and if said default shall continue for fifteen (15) days after written notice thereof shall have been given to Tenant by Landlord, or if default shall be made in any of the other covenants or conditions to be kept, observed and performed by Tenant, and such default shall continue for thirty (30) days after notice thereof in writing to Tenant by Landlord without correction thereof then having been commenced and thereafter diligently prosecuted, Landlord may declare the term of this Lease ended and terminated by giving Tenant written notice of such intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises. Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, either in law or equity. Landlord shall use reasonable efforts to mitigate its damages.

## 16. Quiet Possession.

Landlord covenants and warrants that upon performance by Tenant of its obligations hereunder, Landlord will keep and maintain Tenant in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease.

## 17. Condemnation.

If any legally constituted authority condemns the Building or such part thereof which shall make the Leased Premises unsuitable for leasing, this Lease shall cease when the public authority takes possession, and Landlord and Tenant shall account for rental as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority.

## 18. Subordination.

Tenant accepts this Lease subject and subordinate to any mortgage, deed of trust or other lien presently existing or hereafter arising upon the Leased Premises, or upon the Building and to any renewals, refinancing and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgagee may deem appropriate in its discretion. Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Leased Premises of the Building, and Tenant agrees upon demand to execute such further instruments subordinating this Lease or attorning to the holder of any such liens as Landlord may request. In the event that Tenant should fail to execute any instrument of subordination herein require d to be executed by Tenant promptly as requested, Tenant hereby irrevocably constitutes Landlord as its attorney-in-fact to execute such instrument in Tenant's name, place and stead, it being agreed that such power is one coupled with an interest. Tenant agrees that it will from time to time upon request by Landlord execute and deliver to such persons as Landlord shall request a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord shall reasonably require.

## 19. Security Deposit.

The Security Deposit shall be held by Landlord without liability for interest and as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of rental or a measure of Landlord's damages in case of default by Tenant. Unless otherwise provided by mandatory non-waivable law or regulation, Landlord may commingle the Security Deposit with Landlord's other funds. Landlord may, from time to time, without prejudice to any other remedy, use the Security Deposit to the extent necessary to make good any arrearages of rent or to satisfy any other covenant or obligation of Tenant hereunder. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand the amount so applied in order to restore the Security Deposit to its original amount. If Tenant is not in default at the termination of this Lease, the balance of the Security Deposit remaining after any such application shall be returned by Landlord to Tenant. If Landlord transfers its interest in the Premises during the term of this Lease, Landlord may assign the Security Deposit to the transferee and thereafter shall have no further liability for the return of such Security Deposit.

**20. Notice.**

Any notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to:                                          If to Tenant to:

_second souther Baptist church_

_____ ____ (Manager)                          _____

[Landlord]                                                  [Tenant]

_____                                   _____

[Landlord's Address]                                   [Tenant's Address]

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

**21. Brokers.**

Tenant represents that Tenant was not shown the Premises by any real estate broker or agent and that Tenant has not otherwise engaged in, any activity which could form the basis for a claim for real estate commission, brokerage fee, finder's fee or other similar charge, in connection with this Lease.

**22. Waiver.**

No waiver of any default of Landlord or Tenant hereunder shall be implied from any omission to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated. One or more waivers by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

**23. Memorandum of Lease.**

The parties hereto contemplate that this Lease should not and shall not be filed for record, but in lieu thereof, at the request of either party, Landlord and Tenant shall execute a Memorandum of Lease to be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

**24. Headings.**

The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

**25. Successors.**

p. 10                718588052S            GOGO GADGET            May 26 2017 4:35PM

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

## 26. Consent.

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required or desirable under this Lease.

## 27. Performance.

If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures, together with interest thereon at a rate equal to the lesser of twelve percent (12%) per annum or the then highest lawful rate. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the un reimbursed balance plus accrued interest to Tenant on demand.

## 28. Compliance with Law.

Tenant shall comply with all laws, orders, ordinances and other public requirements now or hereafter pertaining to Tenant's use of the Leased Premises. Landlord shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises.

## 29. Final Agreement.

This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

**30. Governing Law.**

This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of New York.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

_(Manager)_

[Landlord Signature]

[Tenant Signature]

Page 12 of 12

# STANDARD FORM OF STORE LEASE

The Real Estate Board of New York, Inc. 8/99

**Agreement of Lease**, made as of this day of in the year 2016 between SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK, a New York religious corporation with offices at c/o Mario Delbrun, 587 West Side Avenue, #30, New York, NY 10031

party of the first part, hereinafter referred to as OWNER, and

GLORIA A. GLOBOKAR, residing at 70 New England Drive, Stamford, CT 06903

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner a store.

in the building known as a portion of 1372 Jesup Avenue
in the Borough of Bronx, City of New York, for the term of Three (3) years (or until such term shall sooner cease and expire as hereinafter provided) to commence on the 1st day of December in the year 2016 and to end on the 31st day of December in the year 2019 and both dates inclusive, at an annual rental rate of $15,600.00 payable monthly at $1,300.00 per month.

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy the demised premises for a Pizzaria

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. [illegible]

**Repairs:** 4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance, shall cause the same to be operated in a good and workmanlike manner, shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. [illegible] Tenant shall be not entitled to any set-off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty, which are dealt with in Article 9 hereof.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters, or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the demised premises, if the demised premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall

**STANDARD FORM OF STORE LEASE**
The Real Estate Board of New York, Inc.

8/99

Agreement of Lease, made as of the _____ day of _____ in the year 2016, between SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK, a New York religious corporation with offices c/o _____ 287 West Side Avenue, #209 New York, NY 10031

party of the first part, hereinafter referred to as OWNER, and

GLORIA A. GLODEAR, residing at 70 Deer Portland Drive, Stamford, CT 06903

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner a store

in the building known as a portion of 1372 Jerome Avenue
in the Borough of Bronx                    in the City of New York, for the term of Three (3) years

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
1st day of December                        in the year 2016                    and to end on the
31st day of November                       in the year 2019

both dates inclusive, at an annual rental rate of $15,600.00 payable monthly at $1,300.00 per month

which Tenant agrees to pay in lawful money of the United States ...

Owner:                                    F. A. Fitzgerlin

[remainder of page illegible]

Exhibit D

**40.** Tenant shall pay all its own utilities for the demised premises.

IN WITNESS WHEREOF, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

SECOND SOUTHERN BAPTIST CHURCH OF NEW YORK

By: _____ Mario Dell'Era, Agent

_____ Gloria A. Crohokar, Tenant

Witness for Owner: _____

_____

Witness for Tenant: _____

_____

### ACKNOWLEDGEMENT

STATE OF NEW YORK,

                                   SS.:

COUNTY OF _____

On the _____ day of _____ in the year _____, before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC